[J-11-2014][M.O. – Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| FRIENDS OF PENNSYLVANIA LEADERSHIP CHARTER SCHOOL, | : | No. 66 MAP 2013 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court dated 1/16/13 at |
| | : | No. 790 CD 2012 affirming the order of |
| v. | : | the Chester County Court of Common |
| | : | Pleas, Civil Division, entered 3/30/12 |
| | : | and exited 4/2/12 at No. 2011-09438- |
| CHESTER COUNTY BOARD OF ASSESSMENT APPEALS, | : | AB |
| | : | |
| | : | |
| Appellee | : | |
| | : | |
| | : | |
| | : | |
| WEST CHESTER AREA SCHOOL DISTRICT, | : | |
| | : | |
| | : | |
| | : | |
| Intervenor | : | ARGUED:  March 12, 2014 |

## CONCURRING OPINION

**MR. JUSTICE SAYLOR**                    **DECIDED:  September 24, 2014**

I differ with the Commonwealth Court's approach of invalidating Section 1722-A(e)(3), on the ground that it violates Article I, Section 11 of the Constitution, i.e., the Remedies Clause.  A statute may be invalidated only upon the demonstration by a challenger of a plain and palpable violation of the Constitution, see, e.g., W. Mifflin Area Sch. Dist. v. Zahorchak, 607 Pa. 153, 163, 4 A.3d 1042, 1048 (2010), but, as I read the Commonwealth Court's opinion, it reversed this burden.

In this regard, in attacking the constitutionality of Section 1722-A(e)(3), Appellee/Intervenor West Chester Area School District (the "District") asserted that the

Remedies Clause operated in favor of political subdivisions (such as school districts) to preclude the Legislature from retroactively adjusting paid past assessments. See Brief for Appellee in Friends of Pa. Leadership Charter Sch. v. Chester Cnty. Bd. of Assessment Appeals, 61 A.3d 354 (Pa. Cmwlth. 2013), 2013 WL 5355461, at *5-6. The Commonwealth Court credited this proposition on the basis that Appellant (the non-challenging party) had failed to provide any authority or analysis to demonstrate that the Remedies Clause does not so operate. See Friends, 61 A.3d at 361. Per the governing review standard, however, it was the District's burden to convincingly demonstrate the constitutional violation. Thus, the Commonwealth Court should have looked to whether the District cited authority or provided analysis establishing that political subdivisions – which are creatures of the Legislature invested with only those powers expressly granted by or necessarily implied from statute, Mulligan v. Sch. Dist. of Hanover Twp., 241 Pa. 204, 207, 88 A. 362, 362 (1913) – enjoy rights inuring to mankind under our Constitution as against the General Assembly which created them. Since the District, as the challenger, offered no such authority and no such analysis on the point, it was the District which failed to meet the requisite, heavy burden. Accordingly, the Commonwealth Court should have resolved the question against it.

I am also uncomfortable with the majority's holding that Section 1722-A(e)(3) undermines judicial authority and violates the separation of powers doctrine. Upon review of the seminal decision in Commonwealth v. Sutley, 474 Pa. 256, 378 A.2d 780 (1977) (invalidating provisions of a statutory scheme attempting to extend reduced sentences to persons convicted of certain drug offenses), I find the underlying sentiments to be more reflexive than reasoned. Indeed, my own line of thinking meshes with that of the dissenters, particularly Mr. Justice Roberts. See id. at 275-89, 378 A.2d at 790-97 (Roberts, J., dissenting); accord State v. Morris, 378 N.E.2d 708, 715-16

(Ohio 1978) (holding that a retroactive drug sentencing scheme did not violate the separation of powers doctrine under the Ohio Constitution, with reference to the Sutley dissent); Adrian Vermeule, The Judicial Power in the State (and Federal) Courts, 2000 SUP. CT. REV. 357, 381-82 (2000) (positing that "[t]he Pennsylvania court's examination of [Sutley] through the lens of the judicial power, rather than the pardon power, was an error caused by its mistaken perception that fundamental prerogatives of the judiciary were at stake").[1]

In considering Sutley's import and reach, I note that lesser force is accorded to precedent in matters of constitutional interpretation, given that this Court is the only body positioned to make necessary adjustments to prior edicts. See Hunt v. PSP, 603 Pa. 156, 174, 983 A.2d 627, 637-38 (2009). Here, I would refrain from expanding application of Sutley's broad-brush approach to proscribing retrospective legislative social-policy adjustments merely because they may in some way be said to impact upon final judgments, at least in the absence of a close and critical review of Sutley's underpinnings upon developed advocacy. In this regard, I observe that the litigants' briefs in this matter simply are not presented along any such lines.

In any event, I believe this appeal may be resolved on a different ground, namely, based on the Uniformity Clause of the Pennsylvania Constitution, which requires that, "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under

---

[1] This Court frequently recognizes that the Legislature possesses superior tools and resources in making social policy judgments, including comprehensive investigations and policy hearings. See Seebold v. Prison Health Servs., Inc., 618 Pa. 632, 653, 57 A.3d 1232, 1245 (2012). The upshot of Sutley, however, is that, so long as some final judgment in the judicial system is involved, and irrespective of the absence of any harm to vested individual entitlements, the General Assembly simply cannot bring such resources to bear to advance beneficial social policy aims. I have strong reservations concerning such an inflexible approach to separation of powers.

general laws." PA. CONST. art. VIII, §1 (1968). In the arena of property taxation, this Court has determined that all real estate is in the same class of subjects entitled to uniform tax treatment. See McKnight Shopping Ctr., Inc. v. Board of Property Assessment, Appeals & Review of the Cnty. of Allegheny, 417 Pa. 234, 240, 209 A.2d 389, 392 (1965) (noting that under the Pennsylvania Constitution, "it is clear that all real estate is the class entitled to uniform treatment" (emphasis in original)); Downingtown Area School Dist. v. Chester Cnty. Bd. of Assessment Appeals, 590 Pa. 459, 469, 913 A.2d 199, 200 (2006) (explaining that "the Uniformity Clause [generally precludes] real property from being divided into different classes for purposes of systemic property tax assessment"). The only exceptions are those expressly authorized in the Constitution itself. See PA. CONST. art. VIII, §2.(a). Per the terms of the organic document, outside those areas, "[a]ll laws exempting property from taxation . . . shall be void." Id. §5.

Considering such core uniformity principles, the exemption from real estate taxation embodied in Section 1722-A(e) manifests an immediately apparent difficulty, in that the statute does not facially track any exemption delineated in the Pennsylvania Constitution. Moreover, there are no terms of the Charter School Law (and certainly Appellant does not identify any such statutory provision) which require that the types of properties to which the exemption under Section 1722-A(e) is accorded (property owned by "any charter school, cyber charter school or an associated nonprofit foundation, or owned by a nonprofit corporation or nonprofit foundation and leased to" one of the above-enumerated entities, 24 P.S. §17-1722-A(e)) must necessarily conform to a constitutionally delineated exemption.

The two constitutional exemptions which appear to have been put into play in this arena are: 1) public property regularly used for public purposes; and 2) property owned and regularly used by institutions of purely public charities. See PA. CONST. art. VIII,

§2.(a)(iii), (v). It seems worth noting, in the first instance, that Appellant lays no claim in its submission to this Court that its property qualifies for either of these. The District, on the other hand, argues that neither exemption is met by Appellant's property, see Brief for the District at 17-20, albeit that the District did not advance these arguments in its brief in the Commonwealth Court. See Brief for Appellee in Friends of Pa. Leadership Charter Sch. v. Chester Cnty. Bd. of Assessment Appeals, 61 A.3d 354 (Pa. Cmwlth. 2013), 2013 WL 5355461, at *9-13.

Given the framing of the arguments in the course of this litigation, as well as the questions presented for review here, the uniformity aspect of this appeal has been molded to focus more on retrospective application of the Section 1722-A(e)(3) exemption in the abstract, rather than upon the overarching question of whether a constitutional exemption is present in the first instance. In this regard, I would merely observe that such focus upon such a subsidiary angle of the uniformity inquiry is, in my view, somewhat confounding.

Ultimately, however, I agree with the District that, even assuming that Appellant's property falls within a category of permissible exemptions under the Constitution, Section 1722-A(e)(3) creates an artificial distinction among such exempt properties by conditioning retroactive application upon the filing of an assessment appeal.

While acknowledging that taxation is not a matter of science and that perfect uniformity is not required under our Constitution, this Court has held that where there is no reasonable difference between the classes of taxpayers upon which different tax rates are imposed, the classification cannot withstand constitutional scrutiny. See Columbia Gas Transmission Corp. v. Com., 468 Pa. 145, 151, 360 A.2d 592, 595 (1976) (holding that an excise tax imposed at a higher rate on foreign corporations than on domestic corporations violated the Uniformity Clause, as there was no valid reason

for the rate disparity based on the place of incorporation).  Similarly, when there exists no legitimate basis for distinguishing between those taxpayers that are subject to a tax and those that are exempt, the taxing scheme results in unequal burdens on similarly situated entities in violation of the uniformity standard.  See City of Harrisburg v. Sch. Dist. of City of Harrisburg, 551 Pa. 295, 306, 710 A.2d 49, 54 (1998) (concluding that a tax that distinguished between lessees of public and nonpublic property, in the absence of a "reasonable and just basis" for the distinction, violated the Uniformity Clause).

There is little dispute that the legislature may, within constitutional limitations, retroactively extend an exemption or impose a tax.  See Commonwealth v. Budd Co., 379 Pa. 159, 172, 108 A.2d 563, 569 (1954) (determining "that a tax may not be retroactively applied beyond the year of the general legislative session immediately preceding that of its enactment" (emphasis in original)).  However, a distinction between taxpayers predicated only upon the execution of some prior administrative action results in unequal tax burdens being imposed upon similarly situated taxpayers.  See id. at 170, 108 A.2d at 568 (holding that the Corporation Net Income Tax Act of May 14, 1947 violated the Uniformity Clause, because it allowed corporations that received an administrative resettlement of tax prior to May 14, 1947, to deduct carry-back losses, but denied such a deduction to other corporations of the class, producing "arbitrary, unjust and unreasonably discriminatory results").

Significantly, this is not an instance where alike institutions bear substantially different tax burdens because one has exercised its rights to claim an exemption prospectively and the other has not.  The present disparity exists because the General Assembly has created an exemption, in its retroactive application, limited to a specified subset of taxpayers based upon the filing of a prior appeal.  Thus, those entities which

filed an assessment appeal are rewarded with an exemption to which they were not otherwise entitled at the time of filing, while others must pay the tax.

This is a readily apparent uniformity violation.

Madame Justice Todd joins this concurring opinion.